UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| JANA CHRISTINE JONES-TURNER and PENNEY SHERRARD, on their own behalf and all others similarly situated, known or unknown,<br><br>PLAINTIFFS<br><br>v.<br><br>YELLOW ENTERPRISE SYSTEMS, LLC d/b/a YELLOW AMBULANCE SERVICE, et al.<br><br>DEFENDANTS. | ELECTRONICALLY FILED<br><br><br>COLLECTIVE ACTION<br>AND CLASS ACTION<br><br>Case No. 3:07CV-218-S |

## PLAINTIFFS' POST-HEARING REPLY MEMORANDUM

"The crew logs note if a lunch break was given, start and stop times of the shifts, and the unit numbers."

*See Defendant's Answers to Plaintiffs' First Set of Interrogatories, Requests for Production of Documents and Requests for Admissions* **at p. 3, No. 5.**

Two critical pieces of evidence, the crew logs and the dispatch tapes, have not been produced by the Defendants in this case, despite a very clear obligation under the Federal Rules of Civil Procedure.[1]  As the Defendants freely admit, the crew logs should note if a lunch break was given or not.  Both the federal law and the state law require employers (not the employee) to maintain diligent records of all hours worked.  29 U.S.C. § 211(c); KRS 337.320.  If the Defendants are entitled to deduct from the hours worked and recorded by the plaintiffs, then the Defendants have the burden of proving that the Plaintiffs were taking a lunch and not working

---

[1] Curiously, the Defendants seem to think that they are not required to turn over certain documents, including the crew logs, unless and until the Plaintiffs ask them why they weren't produced initially.  This is not how the civil rules were designed to work.  Additionally, there is no requirement that the Plaintiff wait "hundreds of thousands of hours" for the Defendants to review the dispatch tapes before producing them.  Notably, the Defendants have not produced a sample of even a day or week of dispatch communications.

1

during those thirty minutes. In the absence of the crew logs demonstrating if and when the employees received a lunch break, any deductions are both fraudulent and illegal.

The Defendants seek to hide behind a "no-lunch slip" policy.[2] Yet, the Defendants **had the power to schedule lunch breaks**[3] and had the means *to know* whether the employees were allowed a lunch break by virtue of the crew logs. The employer cannot bury its head in the sand and rely upon the employees to complain that they did not get their statutorily-required lunch break. The law of Kentucky is clear, an employer cannot "suffer or permit" its employees to work without paying for that work. It does not matter whether the employee made a "choice" to forego submitting a no-lunch slip that was sometimes acknowledged and sometimes not. An employer "cannot sit back and accept the benefits without compensating for them … [t]he mere promulgation of a rule against such work is not enough … [m]anagement has the power to enforce the rule and must make every effort to do so." *See* 803 KAR 1:065, Section 2(3). *See also Products Co. v. Goodlett*, 427 S.W.2d 821 (Ky. 1968) (finding against employer where "employer knew that [plaintiff] was working through the lunch hour and knew that he was not turning in his time for this extra work and complimented him for the good job he was doing.")

The hearing testimony revealed that the Defendants did not affirmatively ensure the employees were getting meal breaks at all. Indeed, the testimony shows that the dispatchers frequently denied the lunch breaks. When confronted with a no-lunch slip, the Defendants merely scoured the records looking for thirty minutes of downtime (at any point during the day)

---

[2] Defendants have proffered a "Wage and Hour Opinion Letter" as support that its "automatic deduction of pay does not violate the FLSA." *See* Defendant's Response at p. 2. Notably, the opinion letter was not prepared for Defendant and is intended to be "based exclusively on the facts and circumstances described in [the requester's] request …." *See Opinion Letter* at p. 2. Importantly, the opinion letter validates the automatic deduction practice "so long as the employer accurately records actual hours worked, including any work performed during the lunch period." *Id*. Also, the opinion letter provides that the employees must be "completely relieved for purposes of eating a meal" and cautions that "[t]he employer must always, however, compensate employees for work time. If the employee commences work before the full 30-minute lunch period has ended, the employee must be compensated for this work time." *Id*. In other words, the Defendants cannot do what they have been doing in this case.

[3] They even had a legal duty to schedule them. KRS 337.355.

2

and counting that as a lunch break against the plaintiffs –regardless of whether they actually received a break. One employee even testified that he was told by the Defendants that they had accumulated blocks of time as small as ten minutes to reach the thirty-minute threshold to deny his no-lunch slip. *See Weissenberger Testimony* at p. 70.[4] Such a practice violates Kentucky law, which provides that the employees must be completely relieved of their duties. *See* 803 KAR 1:065, Section 4(2) ("The employee must be completely relieved from duty for the purpose of eating regular meals … The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.")

Even Ms. Jolly, the Director of Operations admitted that the employees were not completely relieved of their duties for meal breaks as required by 803 KAR 1:065, Section 4(2). *See Hearing Transcript, Jolly Testimony* at p. 39. Yet, despite this critical admission, the Defendants even today continue deducting thirty minutes from each employees' pay. *Id.* at p. 66. Moreover, Defendants have a policy of encouraging employees to eat on their downtime, but while still on the job and subject to being called to the next run at any moment. *Id.* at p. 42-43. For their part, the employees do not have any idea how long the downtime may last. *Id.* And when they requested a lunch break during the downtime, the common practice was to deny the meal breaks. *See Jones-Turner Deposition* at p. 39-40, 46.

The solution to this "problem" is really very simple; the Defendants should schedule lunch breaks around the run times. Because the aggrieved employees performed almost exclusively "scheduled" non-emergency runs, the Defendants clearly had the power to schedule lunch breaks – just like they scheduled the runs. In fact, Kentucky law requires that the

---

[4] Many employees quit submitting the no-lunch slips because they thought it was a waste of time. *See Charles Ray Hale Testimony* at p. 89, 94; *Jones Turner Deposition* at p. 61. A supervisory employee testified that his employees complained that they were not getting meal breaks and many employees complained that they turned in no-lunch slips but still were not paid. *See Charles Goldman Testimony* at p. 17-20.

Defendants schedule those lunches to occur between the third and fifth hour of the shift. KRS 337.355. The Defendants, however, failed to schedule the breaks at all.[5]

Defendants also incorrectly suggest that Plaintiffs must produce a written plan evidencing that there was a "plan" to deny their meal breaks.[6] If such a written plan existed, the case would be much simpler. It is the *practice* (the unwritten plan) of denying the breaks that is at issue here. Nevertheless, the Defendants admitted that they do not have a plan in place to allow employees to take their statutorily required rest breaks. *See Jolly Testimony* at p. 50. Nor do they have a plan in place that would allow their employees to take meal breaks between the third and fifth hour of each shift. Indeed, if there is a plan at all, it appears to be that the employees are told to grab a sandwich on their way to the next run. *See Jolly Testimony* at p. 44. The only written plan in place is the Defendants' statement to their employees that specific meal breaks cannot be guaranteed. *Id.* at 40.

Defendant has again tried to argue the merits of the claims. Whether or not the rest breaks (which are required by Kentucky law but were denied by the Defendants) or "preceptor training"[7] will be compensable for purposes of the FLSA is a question reserved for the "merits" stage. In particular, it is question of damages. Such discussion is inappropriate at this stage: "district courts should be careful not to evaluate the merits of the claims at the initial certification

---

[5] The Defendants correctly note that they are not required to offer paid lunch breaks. The issue, however, is whether the Defendants are allowed to go back and take way 1/2 hour of each employees pay regardless of whether they received a lunch break or not –information that is easily verifiable through the crew logs and the dispatch communications –evidence which has been withheld by the Defendants.

[6] Defendants misrepresent Ms. Sherrard's testimony on this issue. Ms. Sherrard clarified her comment to say that she was referring to the fact that the Defendants had no "written" policy to deny meals. *See Sherrard Depo.* At p. 98-99. Ms. Sherrard also testified that the Defendants intentionally denied the meal breaks. *Id.* at p. 99.

[7] Training time is not compensable if <u>all</u> four of the following criteria are met: a) Attendance is outside of regular working hours; b) Attendance is in fact voluntary; c) the course, lecture or meeting is <u>not directly related to the employee's job</u>; and d) The employee does not perform any productive work during such attendance. There is no question but that the "preceptor" training is directly related to the employees' jobs. They are training new Yellow EMTs and they are getting EMT recertification hours that allow them to work as for Yellow. Notably, the trainees get paid for attending the training but the trainers do not. *See Jolly Testimony* at p. 37. One employee who clocked in after being asked to serve as a preceptor was reprimanded for doing so. *See Charles Ray Hale Testimony* at p. 91.

stage." *Mares v. Caesars Entertainment, Inc.*, 2007 WL 118877 at *5 (S.D. Ind. 2007) (citing *Coan*, 2005 WL 1799454 at *1); *see also Comer*, 454 F.3d at 546 (acknowledging that the district court postponed merits and damages discovery until later in the litigation).

Finally, Defendants try to defeat conditional certification by arguing that "individualized inquiries" are necessary to determine whether the plaintiffs are similarly situated. Such arguments have been raised and dismissed by other courts as relating to the merits of the case. *See Mares*, 2007 WL 118877 (S.D. Ind. 2007) (distinguishing *Dudley v. Tex. Waste Sys., Inc.*). At the conditional certification stage, it is enough that the Defendants engaged in a pattern, practice or common policy of failing to pay the plaintiffs for all time that they worked. Analyzing the amount of time improperly deducted, and thus how much is owed to each plaintiff, is appropriate for a later stage of the litigation.[8]

                                            Respectfully submitted,

                                            BAHE COOK CANTLEY & JONES PLC
                                            Lawrence L. Jones II
                                            Brent T. Ackerson

                                            /s/ Lawrence L. Jones II
                                            Kentucky Home Life Building
                                            239 South Fifth Street, Suite 700
                                            Louisville, KY 40202
                                            (502) 587-2002
                                            Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

       I hereby certify that I have filed a copy of the foregoing on October 23, 2007. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All parties may access this filing through the Court's system.

                                            /s/ Lawrence L. Jones II
                                            Counsel for Plaintiffs

---

[8] Even in the more stringent arena of Rule 23 class actions, differences in the amount of damages owed to each putative plaintiff is an insufficient ground to overcome class certification. *See Chesher v. Neyer*, 2005 US DIST LEXIS 35536 (S.D. Ohio, July 19, 2005) (quoting Newberg on Class Actions 3.12).