UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

*Electronically Filed*

| | | |
|---|---|---|
| JANA CHRISTINE JONES-TURNER, et al. | ) | |
| | ) | |
| PLAINTIFFS | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:07CV218-S |
| | ) | |
| YELLOW ENTERPRISE SYSTEMS, LLC, et al. | ) | |
| | ) | |
| DEFENDANTS | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DECERTIFY COLLECTIVE ACTION**

Plaintiffs, Jana Christine Jones-Turner ("Jones-Turner"), Penney Sherrard ("Sherrard"),

and Wesley Vardeman ("Vardeman") (collectively "Class Representatives"), concede that meal

and rest breaks are not required under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201

*et seq.* Accordingly, the analysis of whether a violation of the FLSA has occurred must focus

upon whether the meal break was compensable. This in turn requires an individualized analysis

of whether Plaintiffs performed any work during their meal breaks, whether Plaintiffs submitted

a request to be paid for missed meal breaks in accordance with Yellow Ambulance's policy, and

whether Plaintiffs were ultimately paid for missed meal breaks. Contrary to Plaintiffs'

suggestion, the mere fact that Plaintiffs must respond to radio calls does not render a meal break

compensable.[1] In addition, a key area of inquiry highlighted by Plaintiffs' contentions is whether

---

[1] Merely being subject to being on-call does not render meal breaks compensable. *See Lee v. Coahoma County, Miss.*, 937 F.2d 220, 225 (5th Cir. 1991) (holding that the deputies' thirty minute meal period was not compensable merely because the deputies were subject to being recalled for an emergency); *Arnold v. Arkansas*, 910 F. Supp. 1385 (E.D. Ark. 1995) (holding that the fact that the correctional officers were on-call did not make the meal period
(continued…)

Plaintiffs followed Yellow Ambulance's policy of requesting a meal break from the dispatchers—many have admitted they did not—and, if not, whether they reported to Yellow Ambulance that they did not receive a meal break. Simply put, this action is not suitable for collective treatment where plaintiffs are not similarly situated due to their different positions (some of which had responsibility for authorizing meal breaks), different duties, different shifts, and different assignments. Likewise, this action must be decertified as a collective action because not all of the Plaintiffs volunteered as preceptors and therefore cannot be similarly situated.

## ARGUMENT

At the decertification stage, the court will conduct:

> a specific factual analysis of each employee's claim to ensure that each proposed plaintiff is an appropriate member of the collective action. At this second stage, the court will again make a certification decision based on the 'similarly situated' standard, but will require a higher level of proof than was necessary at the first stage for conditional certification. If the conditional group of plaintiffs does not meet this standard at the second stage, the group is then decertified, [and] the opt-in plaintiffs are dismissed without prejudice….

*Lugo v. Farmer's Pride, Inc.*, 2008 WL 638237 at *3 (E.D. Pa. 2008).

---

(…continued)

compensable); *Brinkman v. v. Dept. of Corrections of State of Kan.,* 804 F. Supp. 163, 173 (D. Kan. 1992) (holding that being on-call did not per se mean that the lunch period was compensable); *Barefield v. Village of Winnetka*, 81 F.3d 704, 710 (affirming summary judgment for defendant because the employees merely had to remain in the police department building or with in radio contact for emergencies); *Abel v. Dep't of Corrs. of Kan.*, 1995 WL 550045, at *3 (D. Kan. 1995) (holding that being on-call was not dispositive of the meal period issue because it was for the jury to decide whether meal breaks were predominantly for the benefit of the employer); *Arrington v. City of Macon*, 986 F. Supp. 1474,  1480-83 (M.D. Ga. 1997) (granting summary judgment on issue of whether police officers were entitled to compensation for meal periods because they were on-call and subject to interruptions like radio calls or inquiries from the dispatcher and citizens); *Berger v. Cleveland Clinic Foundation,* 2007 WL 2902907,a t *19 (N.D. Ohio 2007) (holding that being on-call was not dispositive as to whether meal periods were compensable).

In performing the factual analysis as to whether the plaintiffs similarly situated, courts consider: (1) the disparate factual and employment settings of the individual plaintiffs, such as a) job duties; b) geographic location; c) supervision; and d) salary; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *See Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (citing *Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)).  In addition, courts consider:  (1) the extent and consequences of disparate factual and employment settings of the individual plaintiffs; (2) whether the individual issues would predominate at trial; (3) whether a trial of the action could be coherently managed and evidence presented in a manner that would not confuse the jury or unduly prejudice any party; and (4) whether certification would serve the purposes of a collective action under 216(b) of the FLSA.  *O'Brien v. Ed Donnelly Enterprises, Inc.*, 2006 WL 3483956, at *3 (S.D. Ohio 2006), *aff'd*, 575 F.3d 567 (6th Cir. 2009).  Here, each of these factors mandates decertification.

## I.     <u>Plaintiffs Are Not Similarly Situated.</u>

Plaintiffs cannot show that they were similarly situated because none of Yellow Ambulance's policies violate the FLSA.  Employees are similarly situated if "they and potential plaintiffs together **were victims of a common policy or plan that violated the law**." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006) (emphasis added); *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004).  Here, none of the policies relied upon by Plaintiffs violate the FLSA.  To the contrary, Yellow Ambulance's meal break policy, which is posted by the time clock, its Time Card policy, and its Standard Operating Procedures all expressly instruct EMTs to report to Yellow Ambulance if they do not receive a meal break so that they can be paid for that meal break.  None of these policies subject Plaintiffs to any violation of the FLSA.  To the contrary, Yellow Ambulance's policies are designed to ensure

that EMTs who miss a meal break are compensated for that break. *See Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 282 (N.D. Tex. 2008) (decertifying class because there was no evidence of a policy or plan that would require plaintiffs to work off the clock and employer had a policy prohibiting off-the-clock work).

Indeed, the Department of Labor has recognized that Yellow Ambulance's automatic deduction of pay does not violate the FLSA.  A wage and hour opinion letter describing the identical practice used by Yellow Ambulance concludes that it is not a violation. *See* Wage and Hour Opinion Letter dated May 14, 2007.[2]  Again, the Opinion Letter reiterates that determining whether a meal period is compensable is a case-by-case analysis considering factors such as whether employees have time to eat a meal and whether employees are interrupted by work. Automatic deduction of meal breaks is not, on its face, a violation of the FLSA.  Consequently, the individualized analysis necessary to determine whether a violation has occurred mandates that this action be decertified. *See Saleen v. Waste Management, Inc.*, 649 F. Supp.2d 937, 942-43 (D. Minn. 2009) (declining to certify collective action alleging that drivers had not been paid overtime for work performed during meal breaks because they were subject to a timekeeping system that automatically deducted a thirty-minute meal break from their pay, particularly where opt-in plaintiffs were paid for meal breaks during the class period under defendant's policy); *Valcho v. Dallas County Hospital District*, 574 F. Supp.2d 618, 623 (N.D. Tex. 2008) (declining to certify a collective action where hospital deducted 30 minutes from total time recorded for each shift where all nurses were required to report time work during meal periods to their

---

[2] The May 15, 2008 Department of Labor Opinion Letter relied upon by Plaintiffs does nothing to aid their cause.  To the contrary, the May 15, 2008 Opinion Letter makes clear that to determine whether any additional compensation is owed for missed meal breaks or unrecorded

(continued…)

supervisors, nurses were informed of this policy at new employee orientation and reminded of it through written memoranda).   The collective action should be decertified.

Plaintiffs do not and cannot dispute that many EMTs, including each of the named Plaintiffs and several of the opt-in Plaintiffs, followed Yellow Ambulance's policy and were paid for their missed breaks. [Vardeman Depo. 117, Ex.6; 118, Ex. 7, 119 Ex. 8, 119-20, Ex. 9; Sherrard Depo. 45, Ex. 2, 52, 58, 70, 102; Jones-Turner Depo. 30, Ex. 3; 31, Ex. 4; 31-32, Ex. 5; 32, Ex. 6; 33, Ex. 7; 33, Ex 8; 34, Ex. 9, 41, 61; Schindler Aff.; Hearing at 73, 74, 78 (Weisenberger); Ex. 2, 3, 4].   Consequently, the action should be decertified.

Nor is the court's certification of a collective action *Crawford v. Lexington-Fayette Urban Co. Gov't*, 2008 WL 2885230 (E.D. Ky. 2008) dispositive of this matter. *Crawford* involved a claim of whether a 20-minute meal break during which corrections officers purportedly had to perform various tasks was compensable under the FLSA.  The *Crawford* case did not involve the situation, as is the case here, where the employer has a clear policy mandating that employees report any missed meal breaks and can request compensation for that time.  In fact, courts in the cases which are most like the situation here, namely *Saleen, Dudley*, and *Valcho*, declined to certify a collective action.[3]

_____

(…continued)

time requires an individual examination of the number of hours worked in a workweek and a "fact-specific" and "case-by-case" analysis.

[3] Nor is it notable that *Crawford* settled shortly after the decertification decision.  Surely counsel is not suggesting that whether a case will settle is an appropriate factor to consider in determining certification of a collective action.

## II.     Disparate Factual and Employment Settings of the Plaintiffs Mandate Decertification.

The various factual and employment settings of the Plaintiffs require decertification. There is no uniform experience with respect to runs or the opportunity to take meal breaks. Each EMT assignment offers different opportunities to take a meal break.

### A.     EMTs Received Breaks on Many Occasions.

First, even working in the field as an EMT, Plaintiffs have acknowledged that they did receive meal breaks. Sherrard received lunch breaks both as an EMT in the field and in dispatch [Sherrard Depo. 66]. Jones-Turner occasionally took lunch [Jones-Turner Depo. 9]. When crews called in to request a lunch, they were told they could stop for lunch a majority of the time [Jolly Depo. 40]. Some crews do get a lunch break and crews can get a lunch on most days [Linne Depo. 35, 66]. If an EMT is called for a run and is in the middle of eating something, they can say they are eating  and will be allowed to finish eating, at least since 2007 when the lawsuit was filed [Vardeman Depo. 70, 71]. Proposed Class Representative Vardeman even worked it out so that he would be paid for an entire shift when he was stationed at UPS even though his meals were never interrupted. He and the other EMTs who worked at UPS has already been fully compensated for their meal breaks.

Second, it has been admitted that EMTs had the opportunity to for a meal break on certain shifts.[4] It has been uniformly noted that certain shifts and days are busier than others. EMTs on second or third shift have more downtime and more opportunity to take breaks and do not have a problem getting meal breaks [Jolly Depo. 298; Hearing at 58, 63-64 (Jolly); Hearing

---

[4] Plaintiffs suggest that all Yellow Ambulance's difficulties with scheduling meal breaks could be solved if only they staggered their shifts.  Plaintiffs have ignored the testimony that Yellow Ambulance does exactly that so that more EMTs come on duty at peak times [Linne Depo. 30, 56, 98; Jolly Depo. 304].

at 79 (Weisenberger)].   For example, EMTs on third shift are not as busy and have the opportunity to take meal breaks.   Third shift usually sits and would only do a run or two a night [Baker Depo. 124].   Third shift had fewer runs and had time for a meal break [Vardeman Depo. 85, 86, 90; Sherrard Depo. 44, 87]. Likewise, first shift dispatch was able to get lunch breaks [Sherrard Depo. 87]. In addition, it has been noted that weekends are not as busy as weekdays. Saturdays and particularly Sundays were less busy than weekdays and EMTs could get lunch [Jones-Turner Depo. 57; Jolly Depo. 40, 299; Linne Depo. 94].

Third, EMTs on out-of-town runs (which occur on a daily basis) are not subject to radio contact, cannot be called for other runs, and have the opportunity for a meal break.   During out-of-town runs, because EMTs are out of radio contact with dispatch, they cannot be assigned any other runs and have the opportunity to eat once they have dropped the patient off [Hockenbury Depo. 170, 181; Baker Depo. 155; Hearing at 31 (Goldman); Hearing at 78 (Weisenberger); Hearing at 48 (Jolly)].   Vardeman and Jones-Turner admitted that they received meal breaks on out-of-town runs [Vardeman Depo. 76, 77; Jones Turner Depo. 61-62]

Fourth, EMTs assigned to fixed locations or special events, which also occurs on a daily basis, had the opportunity to take meal breaks [Hearing at 59 (Jolly); Hearing at 79 (Weisenberger); Hearing at 30 (Goldman); Vardeman Depo. 75, 76; Hearing at 92 (Hale)].   For example, at UPS, EMTs were free to move about the property and could bring their lunch or buy food at the cafeteria [Vardeman Depo. 59].   While at UPS, "[w]e had time to get our lunches" [Vardeman Depo. 59].

Employees who work on second or third shift have more opportunities to take a meal break as do employees who work in Indiana, are sent on out-of-town runs, or work at special events, such as Churchill Downs, football games, or the fairgrounds [Jones-Turner Depo. 22;

7

Sherrard Depo. 57; Hearing at 24, 30, 31 (Goldman); Hearing at 57-59, 64 (Jolly); Hearing at 78-80 (Weisenberger)]. Meal breaks could be taken while assigned to special events, such as Churchill Downs or ball games. Employees who work at special events, such as Churchill Downs, football games, or the Fairgrounds have the opportunity to take a meal break [Jones-Turner Depo. 22; Sherrard Depo. 57; Hearing at 24, 30, 31 (Goldman); Hearing at 57-59, 64 (Jolly); Hearing at 78-80 (Weisenberger)]. Meal breaks were available to EMTs assigned to contract locations. Special events and out-of-town runs, which permit the opportunity to take meal breaks, can account for as much as one-third of Yellow Ambulance's runs at peak times. Each of these circumstances requires decertification.

> Any analysis of lunch breaks will result in this court and any jury hearing individual testimony regarding whether drivers regularly took lunch breaks, or only occasionally. If they did not take lunch breaks, the fact finder will need to hear the dates each driver actually worked through lunch and whether they needed to be compensated for an extra 30 minutes or one hour for the particular day. Further, the fact finder will need to hear whether any driver advised management that they worked through their break and required compensation.

*Dudley v. Texas Waste Systems, Inc.*, 2005 WL 1140605 at *2 (W.D. Tex. 2005).

Whether any particular missed lunch slip is reimbursed depends upon whether that employee had an out-of-town run or uninterrupted 30 minutes in which to eat lunch. Thus, to determine whether employees are similarly situated necessarily involves an individualized inquiry into whether employees reported that they did not get a meal break, whether they were paid for that time and, if not, whether they had the opportunity for a meal break due to the length of time between runs, whether they were stationed at special events, or whether they were sent on out-of-town runs. *See Reed v. County of Orange*, 266 F.R.D. 446, 458 (C.D. Calif. 2010) (decertifying collective action).

> [W]hether Plaintiffs missed a meal break and reported it varies from assignment to assignment and from deputy to deputy. Attempting to generalize a deputy's experience using a representative sample would be a highly inaccurate method of

determining the validity of Plaintiffs' claims.  It is senseless to proceed as a collective action when Plaintiffs' experiences regarding missed meals vary from day to day, and from individual to individual.  Even more troubling is that OCSD will not have an opportunity to meaningfully cross-examine opt-in Plaintiffs concerning their meal breaks, which will produce unfairness on both sides." *Id.*

As the record amply demonstrates, there is no common experience regarding whether EMTs received meal periods or rest breaks, or whether they were compensated for that time. Such individualized factual circumstances compel decertification.

### B.      Dispatchers are Not Similarly Situated Where They Denied Potential Class Members Breaks.

Dispatchers cannot represent class members seeking to be compensated for missed or interrupted meal breaks when they instructed or allowed some of those class members to engage in such work.   Dispatchers and dispatch supervisors have authority to give EMTs and dispatchers lunch breaks [Vardeman Depo. at 106; Hearing at 12 (Goldman); Hearing at 56 (Jolly)].  To the extent that dispatchers denied meal breaks, they are not similarly situated to EMTs included in the class.  Both Vardeman and Sherrard testified that they told potential class members not to take lunch [Sherrard Depo. 39, 40, 64, 101; Vardeman Depo. 20].  Plaintiffs are seeking to represent all EMTs in this action despite the fact that two of them worked as dispatchers and denied the purported class members the meal breaks that they are claiming.  The collective action must be decertified.  *See, e.g. Appleton v Deloitte & Touche¸ L.L.P.,* 168 F.R.D. 221, 233 (M.D. Tenn. 1996) (denying certification of a class where members of the proposed class were supervisors who were responsible for performance evaluations that were being challenged as discriminatory). The collective action must be decertified.

## C.   No Claim for Volunteering as a Preceptor Exists Under the FLSA.[5]

Plaintiffs have utterly failed to establish that a policy or plan exists that violates the FLSA with respect to their time volunteering as preceptors. It is undisputed by any of the EMTs who have testified that Yellow Ambulance does not require employees to act as preceptors. Yellow Ambulance employees are not required to act as preceptors for the practical exams [Hockenbury Depo. 238; Sherrard Depo. 24, 52, 96; Vardeman Depo. 72; Hearing at 33, 39 (Goldman); Jolly Depo at 300; Hearing at 94 (Hale)].   Volunteers can receive continuing education credit for participating. [Jolly Depo. 287, 300; Hearing at 33, 36 (Goldman); Hearing at 37 (Jolly); Hearing at 80 (Wiesenberger)].  EMTs were not required to act as preceptors to get their continuing education hours for training and could have gotten hours for their training through other services besides Yellow Ambulance [Hearing at 35 (Goldman)].  Consequently, the collective action must be decertified.

Moreover, not all Plaintiffs acted as preceptors.  Jones-Turner did not act as a preceptor [Jones-Turner Depo. 29].  Yellow Ambulance did not maintain any records of who volunteered as a preceptor [Ross Depo. 42, 43, 65].  Not all of the EMTs acted as preceptors.  Jones-Turner never acted as a preceptor.

The testimony uniformly established that performance as a preceptor is voluntary, is outside of an employee's regular work hours, and that employees receive recertification hours that permit them to maintain their license [Sherrard Depo. 24; 59, 60; Hearing at 33-35 (Goldman); Hearing at 37 (Jolly); Hearing at 72, 80 (Weisenberger); Hearing at 94 (Hale)].  *See Chao v. Tradesmen Int'l, Inc.*, 310 F.3d 904, 911 (6th Cir. 2002) (holding that attendance at

---

[5] Although Plaintiffs now appear to take issue with the use of the term preceptor, that term and the description of the time Plaintiffs are claiming is compensable appears in Plaintiffs' Complaint and each Amended Complaint.

voluntary training course was non-compensable under the FLSA (citing 29 C.F.R. §785.27)). Consequently, the collective action must be decertified.

### III.   Individualized Defenses Mandate Decertification.

Contrary to Plaintiffs' assertions, Plaintiffs' allegations of inadequate meal breaks compels consideration of Yellow Ambulance's individualized defenses.  Plaintiffs wrongly assert that the crew logs will answer all questions as to whether Plaintiffs received meal breaks. What Plaintiffs fail to mention, however, is that EMTs often did not follow Yellow Ambulance's policy requiring them to call in to request a meal break. Some EMTs do not request meal breaks and simply take one on their own [Hearing at 88 (Hale); Sherrard Depo. 31]. Vardeman does not advise dispatch that he is taking a lunch break [Vardeman Depo. 70].  EMTs did not call in with a request for a 10-5 every day [Sherrard Depo. 31].  If an EMT did not request a meal break or inform dispatch that he or she was taking a meal break, it necessarily follows that it could not be reflected on the crew logs.[6]  Nor would Yellow Ambulance have any way of knowing whether an EMT in the field missed a meal break unless that EMT reported it.  This in an inherently individualized defense.

Moreover, dispatchers who are members of the purported class did not always note when employees would get lunch [Baker Depo. 35; Vardeman Depo. 79].  Plaintiffs have admitted that they did not advise Yellow Ambulance that they had missed a meal break [Vardeman Depo. 66]. Under these circumstances, Plaintiffs cannot recover for missed meal breaks.

Plaintiffs are estopped from pursuing their claims where they failed to report  missed lunches to Yellow Ambulance.  Although EMTs were advised to follow the missed lunch slip

---

[6] In fact, because the crew logs were notoriously unreliable with respect to any record of meal breaks, they were modified so that dispatchers no longer keep track of lunches on crew logs [Linne Depo. 18].

procedure, some EMTs did and some did not [Hearing at 26 (Goldman)].  For example, Vardeman stopped filling out missed lunch slips [Vardeman Depo. 41].  Jones-Turner followed the missed lunch procedure at times but did not fill out a missed lunch slip every time she missed lunch even though she knew it was the procedure [Jones-Turner Depo. 25, 60-61].  Several courts have refused to certify collective actions based on the fact that the defenses would be fact intensive and require an individualized inquiries.

In *Johnson v. Big Lots Stores, Inc.*, 2008 WL 2520415 (E.D. La. 2008), the court decertified a collective action due to the applicability of individualized defenses. There, the only alternative in trying the individual defenses was to pick the class apart plaintiff by plaintiff, which was tantamount to conducting multiple individual trials on the merits and the antithesis of a collective action.  *See id.* at *17.  The court rejected the use of the collective action device because it did not allow the defendant to cross examine each plaintiff, which would have been prejudicial to the defendant's ability to present a defense.  "[E]fficiency gains … cannot come at the expense of a defendant's ability to prove a statutory defense without raising serious concerns about due process" *Id.* at *18.  The class must be decertified.

Whether Yellow Ambulance was aware of the work and whether the employee failed to report missed meal breaks card are individualized issues that must be considered in any assessment of liability.  EMTs confirmed that they were not told not to record time they worked, were not told not to record any meal breaks that were missed, and were not told not to request to be paid for missed breaks.  EMTs also took meal breaks without requesting them or reporting to dispatch.  Where Plaintiffs failed to record time for which they now claim compensation, Plaintiffs are estopped from pursuing their claims.  This in an inherently individualized defense. "At the end of the day, an employee must show that the employer knew or should have known

that he was working overtime or, better yet, he should report the overtime hours himself.  Either way, the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions."  *Wood v. Mid-America Management Corp.*, 192 Fed. Appx. 378, 381 (6th Cir. 2006); *see also Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (holding that an employer cannot be found to violate the FLSA "where the acts of an employee prevent an employer from acquiring knowledge" of alleged uncompensated overtime hours); *see also Dudley*, 2005 WL 1140605 at *2 (declining to certify collective action where policy required employees to "advise management [if they work through their meal period] so they [could] be compensated for that working time").  Individualized inquiries will have to be conducted with respect to each EMTs' utilization of the procedure for reporting missed lunches. This action cannot be maintained as a collective action and must be decertified.[7]

### A.    Fairness and Procedural Considerations Require Decertification.

The class should be decertified because it will be an impossible task to present proof regarding the different positions, shifts, and assignments to the jury on a collective basis without prejudice and confusion.  Given the myriad of factual issues that must be determined, proceeding on a classwide basis is unmanageable and inefficient.  *See Reed v. County of Orange*, 266 F.R.D. 446, 463 (C.D. Calif. 2010) (decertifying class where collective action would not preserve significant judicial resources, and the substantial confusion that would result from trying plaintiffs' claims together weighs heavily in favor of decertification).  Here, individual issues predominate and Yellow Ambulance would be prejudiced in attempting to assert its defenses on

---

[7] Likewise, an individual analysis must be conducted with respect to the hours worked by each EMT and whether they are in overtime status.  For example, Vardeman currently works only one shift per week and therefore cannot be entitled to compensation for any missed meal breaks under the FLSA because he is not owed any overtime.  *See* May 15, 2008 Department of Labor Opinion Letter.

13

a collective basis.  Sorting out which EMTs were entitled to be compensated for a meal break, whether they requested compensation and were denied is an inherently individual task.  The collective action must be decertified.

## CONCLUSION

Plaintiffs have failed to identify any policy or procedure of Yellow Ambulance that violates the FLSA.  Instead, individual examinations of whether EMTs had an opportunity to take a meal break, whether they requested compensation for that meal break, and whether they were paid for a meal break will have to be performed.  These factual issues are individualized to the class member, shift, and assignment.  Similarly, individual issues exist regarding who volunteered to act as a preceptor.

Yellow Ambulance's individualized defenses mandate that the collective action be decertified.  It will be necessary for the court to engage in a plaintiff-by-plaintiff examination of whether each EMT requested a meal break, whether the EMT took a meal break without reporting it, whether the EMT reported that he or she missed a meal break, and whether Yellow Ambulance paid the EMT for any particular missed meal break.  These are not issues that can be determined collectively.  Yellow Ambulance's motion to decertify the collection action should be granted.

Respectfully submitted,

s / Mitzi D. Wyrick
Edwin S. Hopson
ehopson@wyattfirm.com
Mitzi D. Wyrick
mitziwyrick@wyattfirm.com
WYATT, TARRANT & COMBS, LLP
500 West Jefferson Street, Suite 2800
Louisville, Kentucky 40202-2898
502.598.5235
*Counsel for Yellow Enterprise Systems, LLC d/b/a Yellow Ambulance and Louisville Transportation Company*

## CERTIFICATE OF SERVICE

I hereby certify that on **September 30, 2010**, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to:

Lawrence L. Jones, II
larry@people-lawyers.com
and
Brent T. Ackerson
brent@people-lawyers.com

s / Mitzi D. Wyrick
Mitzi D. Wyrick
mitziwyrick@wyattfirm.com

*One of Counsel for Yellow Enterprise Systems, LLC d/b/a Yellow Ambulance and Louisville Transportation Company*

20332762.1