UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| JANA CHRISTINE JONES-TURNER, PENNEY SHERRARD, and WESLEY VARDEMAN on their own behalf and all others similarly situated, known or unknown, | ) ) ) ) ) | *ELECTRONICALLY FILED* |
| PLAINTIFFS | ) ) | COLLECTIVE ACTION AND CLASS ACTION |
| v. | ) ) ) | Case No. 3:07CV-218-S |
| YELLOW ENTERPRISE SYSTEMS, LLC d/b/a YELLOW AMBULANCE SERVICE, et al. | ) ) ) | |
| DEFENDANTS. | ) ) ) | |

\* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S RESPONSE TO SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION**

In an attempt to obfuscate the issues, the Defendants continue to ignore that their own corporate polices (applied class wide) violated Kentucky's wage and hour law. In defense of its illegal actions, Yellow's corporate representative claims that the "nature of … the business" makes its illegal policy and practices appropriate. *See* Corporate Representative Sacha Powers Depo. at. 23, 29, 32, 100. While the law provides plenty of exceptions for certain types of businesses, the legislature did not see fit to grant Yellow (or its industry) an exception to the mandates of the law.

    **a.**     **Plaintiffs Have Established a Common Practice and Common Injury Determinable by Objective Evidence.**

Plaintiffs and their work colleagues were regularly denied the opportunity to take uninterrupted thirty minute lunch breaks as required by Kentucky law. Because Yellow was understaffed, and run volume was very high, Yellow's management was well aware that its

workers were not getting uninterrupted thirty minute lunch breaks. Indeed, the evidence was right before their eyes at all time. Yellow had a policy in place that *required* its workers to radio the dispatch to request permission to take a lunch break **and** the dispatchers were required to note on the "crew logs" whether the employee received a lunch break for a particular shift. *See* Baker Depo. at 141, 143-44, 153-54*;* Belinda Jolly Depo. at 177, 186-87, 253 (Jolly admits that policy requires crew to request lunch break and that those requests should be recorded on crew logs.); *but see* Jolly Depo. at 157 (The crew logs "is just a way for them to have extra documentation that they did or they didn't get a lunch. So it wasn't a mandatory thing.")

Yet, before the Defendants realized that thousands of crew logs existed that demonstrate that the Employees did not receive lunch breaks, the Defendants admitted that: **"The crew logs note if a lunch break was given, start and stop times of the shifts, and the unit numbers."** *See* Defendant's Answers to Plaintiffs' First Set of Interrogatories, Requests for Production of Documents and Requests for Admissions at p. 3, No. 5 (emphasis added)*.* And Yellow's Director of Operations also testified that the crew logs will tell whether or not the employees received lunch breaks:

> Q. So the crew log, which is page three of exhibit two, if we go back and review all the crew logs, that will tell us who got a lunch and who didn't, right?
>
> A. Yes.

*See* Jolly Depo. at 187-88; *but see* Jolly's attempts to hedge at 188-89. Yet, even a cursory review of these "crew logs" reveal that hardly any employees were receiving their lunch breaks during the years at issue.

Despite possessing the crew logs evidencing that its employees were not getting their statutorily required lunch breaks, Yellow automatically (via a computer software program) deducted ½ hour of pay from each employee's pay *unless that employee prepared a missed*

***lunch slip*** and submitted it to Yellow's Administrative Director, Jan Baker. *See* Baker Depo. at 42, 106-07. And even though Yellow's policy required a request and subsequent permission from dispatch before taking a break, Yellow had a class-wide policy of "assuming" that its employees received lunch breaks if they did not call into dispatch. *See* Jolly Depo. at 199, 205-07. The "onus is placed on the employee" to bring the missed lunch to the attention of Yellow, despite the fact that Yellow possesses the very records that evidence that the employees did not receive their lunch breaks. *Id.* at 198, 208-09.

  An employer cannot bury its head in the sand and rely upon the employees to complain that they did not get their statutorily-required lunch break. The law of Kentucky is clear, an employer cannot "suffer or permit" its employees to work without paying for that work. It does not matter whether the employee made a "choice" not to take a lunch or whether the employee neglected to submit a request for repayment. An employer "cannot sit back and accept the benefits without compensating for them … [t]he mere promulgation of a rule against such work is not enough … [m]anagement has the power to enforce the rule and must make every effort to do so." *See* 803 KAR 1:065, Section 2(3). *See also Products Co. v. Goodlett*, 427 S.W.2d 821 (Ky. 1968) (finding against employer where "employer knew that [plaintiff] was working through the lunch hour and knew that he was not turning in his time for this extra work and complimented him for the good job he was doing.")

  Yet, submitting a missed lunch did not even guarantee that the employee would be re-credited with the pay unlawfully taken from them. *See* Baker Depo. at 38-43. Rather, Ms. Baker would scour through the employee's daily runs and would refuse to give the pay back ***if***

***there was any uninterrupted thirty minute period of stand-by time during the day.*** *Id.* at 47-48.[1]

As Ms. Baker testified, "The policy that --this policy here, as it was explained to me was if you have a 30-minute break anywhere in your day, your workday, then you should take your time to get your lunch." *Id.* at 48. But such a policy ignored the fact Kentucky law mandates unequivocally that an employee must be allowed the lunch break no sooner than the third hour of the shift and no later than the fifth hour. Moreover, according to Ms. Baker, "From what the policy states, it says as a need nature. We can't guarantee when you get your break ... You have to take it when you can." *Id.* at 52-53; 140; *see also id.* at 70 ("Sherman had told me, when we first started this policy, that due to the nature of our business that we could not guarantee breaks.")

Because Ms. Baker, who was the Director in charge of scheduling and payroll, did not know that Kentucky law mandated the lunch between the third and fifth hour[2], Yellow's employees were often denied pay even if the thirty minute period of "stand-by" time was outside of the third or fifth hour. *See* Baker Depo. at 70*; see also id.* at 70 ("[Y]ou were to take your lunches whenever you could.") According to Yellow's class-wide policy, someone who came in at 5:00 a.m. would be counted as having taken a lunch even if that employee's only "downtime" or "standby time"[3] occurred at 6:00 a.m. --one hour into their shift. *Id.* at 53-56, 99-100. As Yellow's Corporate Representative testified, "Due to the nature of the business, it is not a policy

---

[1] Much to the chagrin of Plaintiffs' counsel, Ms. Baker admitted that she altered some original documents *after* this lawsuit was filed --which calls into questions the reliability of Yellow's records that have been produced. *Id.* at 165-66.

[2] Belinda Jolly, Yellow's Director of Operations, also claims that she did not know the law required a lunch break between the third and fifth hour of the shift. Jolly Depo. at 169-70.

[3] Putting aside the fact that "stand-by" time by its very nature is not "complete relief of duties" as required by Kentucky law, Yellow fails to recognize that it would be difficult for an employee to take a lunch break when the employee was unsure of when the next run would be assigned. Yellow's position is that the employee "should have taken advantage of that downtime" to take a lunch. *Id.* at 145. Yet, when Yellow places an employee on "standby"

that employees take their lunch between the third and fifth hours." *See* Powers Corp. Rep. Depo. at 100. **Thus, by its own admission, Yellow enforced a class-wide policy that violated Kentucky law with regard to *when* they would receive their lunch breaks.[4]**

Here, the claims of the Plaintiffs and the Class Members arise from a single course of conduct. The Defendants admit that they had no policy in place for making sure that the Employees were taking lunch breaks. The Defendants admit that they had no policy in place to mandate that the Employees received their lunch between the third and fifth hours of their shifts as required by Kentucky law. The Defendants admit that they believe the "nature of the business" precludes them from being able to guarantee a thirty minute, uninterrupted period for lunch. The Defendants admit that they had no policy in place to make sure that the Employees were getting the ten minute rest breaks required by Kentucky law. The Defendants admit that they did not pay the Employees who "volunteered" to help with their training sessions. The Defendants admit all of these crucial points –they just deny that their admissions amount to illegal conduct.

The *Wal-Mart* case is irrelevant to this case based upon the very differing factual situations. In *Wal-Mart,* the Court was confronted with a nationwide class of some 1.5 million female employees, because of Wal-Mart's alleged discrimination against women in violation of *Title VII of the Civil Rights Act of 1964*. Indeed, Justice Scalia opened the majority opinion by stating: "We are presented with one of the most expansive class actions ever." *Id*. at 385. The Court was quick to note the size and geographic diversity of the Defendant:

---

the employee has no idea whether he or she will be on standby for five minutes or thirty minutes. *Id.* 174-76. Hindsight is 20/20, foresight in this case was anything but clear.

[4] Ms. Baker also admits that Yellow has no policy regarding when employees get their statutorily required rest breaks. *Id.* at 54-55 ("There is no policy."); *see also id.* at 176. Ms. Jolly agrees. *See* Jolly Depo. at 282. Yellow also admits that there is no policy in place to make sure that its employees are "fully relieved of their duties" as required by Kentucky law. *See* Baker Depo. at 111, 174.

> It operates four types of retail stores throughout the country: Discount Stores, Supercenters, Neighborhood Markets, and Sam's Clubs. Those stores are divided into seven nationwide divisions, which in turn comprise 41 regions of 80 to 85 stores apiece. Each store has between 40 and 53 separate departments and 80 to 500 staff positions. In all, Wal-Mart operates approximately 3,400 stores and employs more than one million people.

*Id*. The Court then noted that "[p]ay and promotion decisions at Wal-Mart are generally committed to local managers' broad discretion, which is exercised 'in a largely subjective manner.'" *Id*. This resulted in "literally millions of employment decisions at once." *Id* at 391. Noting the difficulty of dealing with a classwide claim of discrimination, "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *Id*.

In this case, we are dealing with a few thousand (at most) employees who work in Kentucky, who all used the same dispatching service, who answered to the same boss, and who were subjected to the same illegal policies that were outlined in Plaintiffs' briefing materials. Therefore, the concerns addressed by the Court in *Wal-Mart* are inapplicable to this case and the motion for leave to file the supplemental brief should be denied.

  **b.  A Rule 23(b)(2) Class Is Appropriate Because of Defendants' Ongoing Violations of Kentucky Wage and Hour Law**

A Rule 23(b)(2) injunctive relief class is appropriate in this case because Yellow continues to violate the state law rights of its employees in the same way it has for many years. Rule 23(b)(2) provides that such a class is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" In this case, the executives who were charged with Yellow's operations have admitted:

6

     1)     Yellow has not changed its policies about meal breaks and rest breaks since 1999;[5]

     2)     Most putative class members do not receive their meal breaks during the middle of their shifts as required by KRS 337.355;[6]

     3)     It is possible to mandate that an employee take a break at a certain time;

     4)     Yellow has no policy or practice in place to mandate that its employees receive breaks at all –much less at a particular time;[7]

     5)     Yellow could easily track when and if its employees are receiving breaks, but does not do so.[8]

Clearly, this is a practice that must stop. By forcing its employees to "grab something at the drive through and wolf it down" (S*ee* Jolly Depo. at p. 37), Yellow has enriched itself at the expense of its employees –and its puts the public at risk as the Employees eat while driving to the next location. Because Yellow refuses to comply with the very clear mandates of Kentucky state law, injunctive relief is both necessary and appropriate. Accordingly, the Court should certify the class pursuant to Rule 23(b)(2).

---

[5]    *See* Deposition of Corporate Representative Sacha Powers at 15-16. But Yellow has begun recently paying "missed lunch" slips without question. *Id.* at 33-35, 77-80. That change was done at the request of Belinda Jolly. *Id.* at 82-83. Yet, Yellow has made no effort to convey that change to its workforce. *Id.* at 33-35, 77-80. Ms. Powers, who is Yellow's current Human Resources Director and its designated corporate representative, acknowledges that Kentucky law requires a lunch break between the 3rd and 5th hour of the shift, as well as rest breaks. *Id.* at 25-27, 99-100. However, the Corporation believes that the "nature" of the EMS business makes it different from other employers in Kentucky. *Id.* at 32, 99-100.

[6]    In fact, despite being involved in litigation over this issue for nearly 3 ½ years, and enjoying the benefit of being advised by one of Kentucky's largest and prestigious law firms, Jan Baker (the management employee charged with deducting lunch breaks from employee paychecks) claims that she did not know that KRS 337.355 requires Yellow to provide the lunch break no sooner than the third hour of the shift and no later than the fifth hour of the shift. Indeed, even when faced with an employee demand for repayment of the automatically deducted lunch break, Ms. Baker looked for thirty minutes of "downtime" during a day –not whether or not the employee actually was authorized to take a lunch break and not whether the break took place within the mandated hours.

[7]    *See* Powers Corporate Rep. Depo. at 51-52, 56-57, 63-64, 98-101.

[8]    Moreover, Yellow simply pays its employees for their lunches in the Owensboro and Hopkinsville markets rather than automatically deducting it from their pay. *See* Powers Corporate Rep. Depo. at 91-92. While that would not excuse non-compliance with the law, it would at least ensure that workers were not subjected to a legal double whammy –no lunch **and** an automatic deduction from their pay.

Nonetheless, because the Defendants' conduct is ongoing, the practical effect of denying class certification on these grounds will lead to yet another lawsuit, brought by another current employee, seeking class certification to enjoin the Defendants from engaging in their current practice of violating the law. Judicial efficiency mandates that the current action, which is seasoned by years of litigation, be certified to enjoin this conduct. Moreover, should the Court resolve to deny certification for purposes of recovering past due wages (which it should not), then the Defendants' argument that a "money damages" and "injunctive relief" cannot be simultaneously certified becomes moot.

    c.    **Randleman v. Fidelity Nat'l Title Ins. Co.**

Plaintiffs incorporate by reference *Plaintiff's Response to Defendants' Motion for Leave to File Supplemental Brief in Opposition to Plaintiffs' Motion for Rule 23 Class Certification.* (DN 89).

## **CONCLUSION**

For the foregoing reasons, the class should be certified.

                      Respectfully submitted,

                      JONES WARD PLC
                      Lawrence L. Jones II

                      /s/ Lawrence L. Jones II
                      Marion E. Taylor Building
                      312 South Fourth Street, Sixth Floor
                      Louisville, Kentucky 40202
                      (502) 882-6000

                      and

                      Brent T. Ackerson
                      Ackerson Law Offices
                      600 West Main Street, Suite 500
                      Louisville, Kentucky 40202
                      Phone: (502) 882-5176
                      Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

 I hereby certify that all parties have been served on this date in accordance with the Court's ECF/CM system.

              _/s/ Lawrence L. Jones II_
              Counsel for Plaintiffs